**SO ORDERED.**

**SIGNED this 20 day of July, 2009.**

_____
**ROBERT E. LITTLEFIELD, JR.**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____
In re

LINCOLN LOGS LTD.                                        Chapter 11
                                                        Main Case No. 08-13079
                                                        Jointly Administered

                          Debtor(s)
_____
In re

SNAKE RIVER LOG HOMES, LLC                    Case No. 08-13080

                          Debtor(s)
_____

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER**
**CONFIRMING AMENDED CHAPTER 11 JOINT PLAN OF LIQUIDATION**
**FOR LINCOLN LOGS LTD. AND SNAKE RIVER LOG HOMES, LLC**

Lincoln Logs Ltd. ("Lincoln") and Snake River Log Homes, LLC ("Snake

River"), debtors and debtors in possession (collectively, the "Debtors" and each a "Debtor")

having proposed and filed their First Amended Chapter 11 Joint Plan of Liquidation for Lincoln and Snake River dated May 4, 2009 ("Plan") (Docket No. 254, Exh. A) pursuant to Section 1121 of Title 11, United States Code ("Bankruptcy Code"); and the First Amended Disclosure Statement Pursuant To Section 1125 of the Bankruptcy Code Concerning the Chapter 11 Joint Plan of Liquidation for Lincoln and Snake River dated May 4, 2009 ("Disclosure Statement") (Docket No. 254) having been approved by the Court as containing "adequate information" pursuant to the Order Approving Disclosure Statement dated May 7, 2009 ("Disclosure Statement Approval Order") (Docket No. 258); and copies of the Plan, Disclosure Statement, Disclosure Statement Approval Order, along with an appropriate ballot for purposes of voting on the Plan ("Ballot") having been transmitted to all holders of Claims[1] entitled to vote on the Plan on May 15, 2009 (Docket No. 297); and the Disclosure Statement Approval Order having (a) fixed June 10, 2009 as the last day for filing written acceptances or rejections of the Plan by submitting completed ballots to Phillips Lytle LLP, counsel to Lincoln and Snake River, in order to be counted as acceptances or rejections of the Plan, and (b) fixed June 17, 2009 at 10:30 a.m. as the time and date for the hearing pursuant to §§ 1128 and 1129 of the Bankruptcy Code ("Confirmation Hearing") to consider confirmation of the Plan and any objections thereto; and due notice of the Confirmation Hearing and the date by which objections to confirmation of the Plan must be filed having been served by the Debtors in accordance with the terms of the Disclosure Statement Approval Order; and the Confirmation Hearing having been held before the Court on June 17, 2009; and the appearance of all interested parties having been noted on the record; and the Court having considered all objections (if any) to confirmation of the Plan; and

---

[1] All capitalized terms used but not defined herein shall have the meaning set forth in the Plan, a copy of which is attached as Exhibit A.

upon all the record and the evidence adduced at the Confirmation Hearing and after due deliberation, and sufficient cause appearing therefor, and it having been FOUND, ADJUDICATED and DETERMINED, that:

A.    Jurisdiction.  The confirmation of the Plan presents a core bankruptcy matter under Title 28, United States Code, and the Court has jurisdiction to enter a final order with respect thereto.

1.    This Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. § 1334.

2.    Venue of these jointly administered Chapter 11 cases (collectively, the "Case") is properly in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The Confirmation Hearing is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

B.    The Plan Complies With The Bankruptcy Code (Section 1129(a)(1)).  The Plan complies with the applicable provisions of the Bankruptcy Code:

1.    Lincoln is a corporation organized under the laws of the State of New York and is eligible to be a "debtor" under § 109 of the Bankruptcy Code.

2.    Snake River is a limited liability company organized under the laws of the State of Idaho and is eligible to be a "debtor" under § 109 of the Bankruptcy Code.

3.    On September 19, 2008, the Debtors filed their Chapter 11 petitions, pursuant to § 301 of the Bankruptcy Code.

4.    The proponent of the Plan, the Debtors, are a proper proponent of a plan pursuant to § 1121 of the Bankruptcy Code.

5.    All appropriate governmental units (as defined in § 101(27) of the Bankruptcy Code) ("Governmental Units") were given adequate notice of the Confirmation Hearing.

6.    Any party in interest required to receive notice of the Confirmation Hearing was given adequate notice of the Confirmation Hearing.

7.    All parties in interest and all Governmental Units had the opportunity to appear and be heard at the Confirmation Hearing.

8.    The Plan complies with Rule 3016 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

C.    <u>Proper Classification (Section 1123(a)(l))</u>.  The classification of Claims and Interests under the Plan complies with § 1122 of the Bankruptcy Code.  All Claims or Interests, if subject to classification pursuant to the Bankruptcy Code, are placed in a particular Class pursuant to the Plan and are substantially similar to the other Claims or Interests, as the case may be, in such Class.

D.    <u>Identification and Treatment of Impaired Classes and Unimpaired Classes (Sections 1123(a)(2) and (3))</u>.  The Plan specifies in Article 4 the treatment of unimpaired Classes 1 and 2 and impaired Classes 3, 4, 5 and 6, and the Plan likewise specifies in Article 3 that Classes 1 and 2 are unimpaired and Classes 3, 4, 5 and 6 are impaired under the Plan.

E.    <u>No Discrimination (Section 1123(a)(4))</u>.  The Plan provides for the same treatment of each Claim or Interest in a particular Class, unless particular holders of Claims or Interests have otherwise agreed.

F.    <u>Implementation Of The Plan (Section 1123(a)(5))</u>. The Plan provides adequate means for the Plan's implementation, as described more fully in Article 7 of the Plan.

G.     Executory Contracts And Unexpired Leases (Section 1123(b)(2)).  As provided in Section 10.01(a) of the Plan, all executory contracts and unexpired leases which have not been assumed or rejected prior to the Confirmation Date shall be rejected by the Debtors as of the Confirmation Date.  Each person who is a party to an executory contract or unexpired lease rejected pursuant to Section 10.01(a) of the Plan will be entitled to file, within thirty (30) days after the Confirmation Date, a proof of claim for damages alleged to have arisen from the rejection of such executory contract or unexpired lease, if any.  Objections to any such proof of claim must be filed not later than ninety (90) days after such proof of claim is filed, and the Court will adjudicate any such objections.  In accordance with Section 10.01(e) of the Plan, however, nothing contained herein extends the time for filing a Proof of Claim for rejection of any contract or lease rejected prior to the Confirmation Date.

H.     The Debtor Complies With The Bankruptcy Code (Section 1129(a)(2)).  The Debtors, as proponents of the Plan, have complied with the applicable provisions of the Bankruptcy Code.  The solicitation of acceptances and rejections from holders of impaired Claims is in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

I.     Plan Proposed In Good Faith (Section 1129(a)(3)).  The Court has examined the totality of the circumstances surrounding the formulation of the Plan and has concluded that the Plan has been proposed in good faith and not by any means forbidden by law as required by § 1129(a)(3).  The Plan has been proposed for valid business purposes, to satisfy substantial obligations of the Debtors and to provide relief under Chapter 11 of the Bankruptcy Code to the Debtors and its Creditors.

J.      Payments of Costs and Expenses (Section 1129(a)(4)). Any payment made or to be made pursuant to the Plan for services or costs and expenses incurred in or in connection with this Chapter 11 Case has been approved by, or will be subject to the approval of, the Court as reasonable.

K.      Directors And Officers (Section 1129(a)(5)). The Debtors have disclosed that they will be dissolved as provided under New York and Idaho law upon the closing of this Case.

L.      No Rate Change (Section 1129(a)(6)). No rate changes are provided for in the Plan that would require governmental regulatory commission approval.

M.      Best Interest Of Creditors (Section 1129(a)(7)). With respect to each impaired Class of Claims or Interests, each Holder of a Claim or Interest will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

N.      Plan Acceptance (Section 1129(a)(8)). Holders of Allowed Claims in Classes 1 and 2 are unimpaired within the meaning of § 1124 of the Bankruptcy Code, and therefore, Classes 1 and 2 are deemed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code. Holders of Allowed Claims in Classes 3, 4, 5 and 6 are impaired within the meaning of § 1124 of the Bankruptcy Code. Classes 3, 4 and 6 have accepted the Plan pursuant to § 1126(c) of the Bankruptcy Code. Class 5 is receiving no distribution under the Plan and is deemed to have conclusively rejected the Plan.

O.      Plan Treatment Of Administrative Expenses Claims, Priority Claims And Tax Claims (Section 1129(a)(9)). The treatment of Claims of the type specified in §§ 507(a)(1)

through 507(a)(8) of the Bankruptcy Code, as described in Article 2 of the Plan, fulfills the requirements of § 1129(a)(9) of the Bankruptcy Code.

P.     At Least One Impaired Class Accepted The Plan (Section 1129(a)(10)).   Classes 3, 4 and 6 are impaired Classes under the Plan, and each has accepted the Plan, and does not include an insider of the Debtor, except to the extent Benjamin Shepherd (former CFO), Jeff LaPell (former COO) or Steve Patlin (former Director) are considered insiders.   Benjamin Shepherd filed two Class 3 claims totaling $14,100 and voted to accept the Plan.   Jeff LaPell filed one Class 3 claim totaling $18,000 and voted to accept the Plan.   Steve Patlin filed one Class 3 claim totaling $12,000 and voted to reject the Plan.   The votes of these three potential insiders are insignificant as to the acceptance calculation.

Q.     Feasibility (Section 1129(a)(11)).

1.     There will be sufficient funds available, as described in Section 6.03 of the Plan, to make the payments to Creditors required by the Plan, and to compensate and reimburse the Professionals in the Case, as may be ordered by the Court.

2.     All Professionals or other entities requesting allowance of payment of compensation and reimbursement of expenses pursuant to §§ 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for such allowance no later than sixty (60) days following the Confirmation Date.   Objections to each such application may be filed no later than twenty (20) days after the date such application is filed. In the event no objections to such an application are filed, an order approving such application may be entered without a hearing.

3.     On the basis of information presented in the Plan, the Declarations filed in support thereof (Docket Nos. 300 and 301) the record of the Confirmation Hearing and the Disclosure Statement, the Court concludes that confirmation of the Plan is not likely to be

followed by the need for further reorganization of the Debtors, as this Plan will effect a complete liquidation.

R.    Fees (Section 1129(a)(12)).  All fees payable under 28 U.S.C. § 1930 have been paid or the Plan provides for the payment of all such fees.

S.    Retiree Benefits (Section 1129(a)(13)).  As provided in Section 13.09 of the Plan, the Plan provides for the termination, as of the Confirmation Date, of all benefit programs.

Now, after due deliberation, and upon the finding that the Plan is confirmable for all of the foregoing reasons, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    Confirmation.  Based on the foregoing findings of fact and conclusions of law, the Plan, a copy of which is attached as Exhibit A, is hereby confirmed.

2.    Objections Overruled.  To the extent any objections to confirmation of the Plan have not been withdrawn prior to entry of this Order, or are not cured by the relief granted herein, all remaining objections are hereby overruled and all withdrawn objections are hereby deemed withdrawn with prejudice.

3.    Binding Plan And Order.  The provisions of the Plan and this order ("Confirmation Order") hereby are made binding upon, inter alia, the Debtors, any holder of a Claim or Interest (whether or not the Claim or Interest is impaired under the Plan and whether or not such Holder of a Claim or Interest has (a) filed, or is deemed to have filed, a proof of claim or proof of interest, or (b) accepted the Plan), all non-Debtor parties to all executory contracts and unexpired leases, Governmental Units and any other party in interest.  The provisions of this Confirmation Order hereby are made non-severable and mutually dependent.

4.      Authorizations.

a.      The Debtors and the Liquidating Trustee, and to the extent required by the Plan, any Governmental Units and their agents and attorneys hereby are authorized, empowered and directed to carry out all of the provisions of the Plan, and to perform such acts as are necessary or appropriate in connection with the Plan and this Confirmation Order.

b.      The Debtors and the Liquidating Trustee are directed to take all actions reasonably necessary, in their sole discretion, and direct their employees and consultants to take such actions and otherwise cooperate, to enable the Liquidating Trustee to (a) object to Claims according to the terms of the Plan, (b) consummate the Plan, (c) maximize the recovery of assets, and (d) close this Case.

c.      The Liquidating Trust Agreement (Docket No. 299) is hereby approved and pursuant to the Plan, effective as of the Confirmation Date.

d.      On or before the Confirmation Date, the Liquidating Trustee shall take all steps necessary to establish a Liquidating Trust. On the Confirmation Date or as soon thereafter as possible, and in accordance herewith, Debtors shall transfer to the Liquidating Trust all of their right, title and interest in the Liquidating Trust Assets and Claims. In connection with the above-described rights and causes of action, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to Liquidating Trust shall vest in the Liquidating Trustee and is representatives. Notwithstanding the occurrence of the Confirmation Date, to the extent that operating assets of active businesses remain unsold, such assets may be retained by Debtors and not delivered into the Liquidating Trust pending the liquidation of such assets. The

Liquidating Trustee shall be Justin Heller, Esq. and counsel to the Liquidating Trustee shall be Nolan & Heller, LLP.

        e.      The Liquidating Trust shall be established for the sole purpose of liquidating its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

        f.      On and after the Confirmation Date, the Liquidating Trustee shall allocate to the Disputed Claims reserve: (i) Cash in an aggregate amount sufficient to pay to each holder of a Disputed Unsecured Claim the amount that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date or any subsequent distribution date, (ii) net earnings on such Cash and (iii) any other property distributed in respect of such beneficial interests in the Liquidating Trust. All Cash and Cash equivalents and earnings thereon shall be used to satisfy any expenses incurred in connection with the maintenance of the Disputed Claims reserve, including taxes payable by the Disputed Claims reserve, if any, and repayment of any tax advances.

        g.      In accordance with the Liquidating Trust Agreement and any other agreements entered into in connection therewith, on the Confirmation Date or as soon thereafter as possible, Debtors shall transfer all of their right, title and interest in the Liquidating Trust Assets and Claims to the Liquidating Trust, proceeds of which the Liquidating Trustee can use to fund any reasonably necessary administrative expenses (including, but not limited to, any taxes imposed on the Liquidating Trust or fees and expenses in connection with its liquidations).

        h.      The transfer by Debtors of the Liquidating Trust Assets and Claims to the Liquidating Trust shall be made, as provided herein, for the benefit of holders of Allowed Claims against Debtors whether Allowed on or after the Confirmation Date. In this regard, the

assets to be held by the Liquidating Trust initially will be deemed transferred to holders of Allowed Claims against Debtors, and, in respect of any Disputed Claims, allocated to the Disputed Claims reserve. Immediately thereafter and on behalf of such recipients, Debtors shall transfer such assets to the Liquidating Trust in exchange for the undivided beneficial interests in the Liquidating Trust for the benefit of holders of such Claims. Upon transfer of the Liquidating Trust Assets and Claims, Debtors shall have no interest in or with respect to the Liquidating Trust Assets and Claims or the Liquidating Trust.

The Debtors are transferring all of their right, title and interest in the Liquidating Trust Assets and Claims to the Liquidating Trust on the Confirmation Date. The failure to transfer one or more assets constituting a Liquidating Trust Asset or Claim on the Confirmation Date, however, shall not preclude Debtors from effecting such transfer at a later date. Debtors by any of its authorized representatives and/or by the Liquidating Trustee shall be authorized and empowered to execute, deliver and cause the recording of such deeds, titles or other instruments of conveyance as are necessary to effect the transfer of such Liquidating Trust Assets and Claims to the Liquidating Trust.

For federal income tax purposes, all parties including, without limitation, the Debtors, the Liquidating Trustee and the holders of Allowed Claims who are beneficiaries of the Liquidating Trust, shall treat the transfer of assets to the Liquidating Trust, in accordance with the terms of the Plan and the Liquidating Trust Agreement (and in respect of the Disputed Claims, the Disputed Claims reserve), as a transfer to the holders of Allowed Claims in satisfaction of such Claims, followed by a transfer by such holders to the Liquidating Trust, and the beneficiaries of the Liquidating Trust shall be treated as the grantors and owners thereof.

i.　　In accordance with the provisions of the Liquidating Trust Agreement, the Liquidating Trustee, in its reasonable business judgment, shall, in an expeditious but orderly manner, liquidate and convert to Cash the assets of the Liquidating Trust, make timely distributions and not unduly prolong the duration of the Liquidating Trust.  The liquidation of the Liquidating Trust Assets and Claims may be accomplished either through the sale, prosecution, compromise and settlement, abandonment or dismissal of the Liquidating Trust Assets and Claims.  Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall be entitled to determine whether or not to pursue any of the claims comprising the Liquidating Trust Assets and Claims, as it determines is in the best interests of the beneficiaries of the Liquidating Trust and consistent with the purposes of the Liquidating Trust and subject to the terms of the Liquidating Trust Agreement.  To the extent that the Liquidating Trustee takes or fails to take any action that a creditor believes is appropriate or inappropriate, as the case may be, such creditor may seek relief from the Bankruptcy Court.  Additionally, to the extent that a holder of a beneficial interest in the Liquidating Trust receives a recovery in respect of its Claim from a source other than the Liquidating Trust, such as the proceeds of Debtors' insurance policies or from a third party, the Liquidating Trustee may, in its reasonable discretion, and after written notice and an opportunity to be heard by the Bankruptcy Court in accordance with section 102 of the Bankruptcy Code, reduce such holder's Claim against Debtors by the amount of such recovery to effectuate a more equitable distribution among the holders of Claims.  The Liquidating Trustee may incur any reasonable and necessary expenses arising from or related to the liquidation and conversion to Cash of the Liquidating Trust Assets and Claims.  The professional fees of the Liquidating Trustee, as well as any compensation proposed to be paid to

the Liquidating Trustee in respect of the services to be rendered pursuant to the Liquidating Trust Agreement shall be paid pursuant to the Liquidating Trust Agreement and this order.

The Liquidating Trustee shall have the power to (i) liquidate or prosecute for the benefit of the Liquidating Trust, the Liquidating Trust Assets and Claims (whether such suits are brought in the name of the Liquidating Trust or otherwise) and (ii) administer the assets of the Liquidating Trust and otherwise perform the functions and take the actions provided for or permitted in the Liquidating Trust Agreement or in any other agreement executed by the Liquidating Trustee pursuant to the Plan. Any and all proceeds generated from the various Liquidating Trust Assets and Claims shall constitute the property of the Liquidating Trust.

The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust (including tax issues related to the Disputed Claims reserve) under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trustee or the Liquidating Trust will also serve as the Disbursing Agent.

The rights and responsibilities of the Liquidating Trustee shall be governed by the Liquidating Trust Agreement.

j.      The right and power of the Liquidating Trustee to invest any Cash transferred to the Liquidating Trust (including Cash allocated to the Disputed Claims reserve), the Cash proceeds from the realization or disposition of any of the Liquidating Trust Assets and Claims, and any income earned by the Liquidating Trust, shall be limited to the right and power to invest such Cash in United States Treasury Bills, interest-bearing certificates of deposit, tax exempt securities or investments permitted by section 345 of the Bankruptcy Code or otherwise

authorized by the Bankruptcy Court, using prudent efforts to enhance the rates of interest earned on such Cash without inordinate credit risk or interest rate risk; provided, however, that (a) the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust, within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise, and (b) the Liquidating Trustee may expend the Cash of the Liquidating Trust (i) as reasonably necessary to meet contingent liabilities and to maintain the value of the assets of the Liquidating Trust during liquidation, (ii) to pay reasonable administrative expenses (including, but not limited to, any taxes imposed on the Liquidating Trust or fees and expenses in connection with litigation concerning any Claims held by a Liquidating Trust) and (iii) to satisfy other liabilities incurred by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement.

        k.      On the Confirmation Date, the Liquidating Trust will become effective for the benefit of the applicable holders of Allowed Claims and, in respect of any Disputed Claims, the Disputed Claims reserve. The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Liquidating Trust as a grantor trust for federal income tax purposes. All parties (including Debtors, the Liquidating Trustee and holders of Allowed Claims against Debtors) shall execute any documents or other instruments as necessary to cause title to the Liquidating Trust Assets and Claims to be transferred to the Liquidating Trust.

l.        Pursuant to Section 350 of the Bankruptcy Code, when all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed by Final Order, and all of the Liquidating Trust Assets and Claims have been distributed in accordance with the Plan (which distribution shall take place within thirty (30) days of the resolution of the last Chapter 5 cause of action), the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Case in accordance with the Bankruptcy Code and the Bankruptcy Rules. The Liquidating Trust will terminate within six months thereafter.

m.        Upon the Confirmation Date, Debtors shall transfer and assign to the Liquidating Trust full title to, and the Liquidating Trust shall be authorized to take possession of, all such entities' books and records. The Liquidating Trust shall have the responsibility of storing and maintaining books and records transferred hereunder. Debtors shall cooperate with the Liquidating Trustee (or Disbursing Agent) to facilitate the delivery and storage of the books and records in accordance herewith. The Liquidating Trustee and Debtors shall be entitled to reasonable access to any books and records transferred to the Liquidating Trust for all necessary corporate purposes, including, without limitation, defending or prosecuting litigation, determining insurance coverage, filing tax returns, and addressing personnel matters. For the purpose of this section, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of Debtors maintained by or in possession of third parties and all of the claims and rights of Debtors in and to their books and records, wherever located.

n.        The Debtors shall fully cooperate with the Liquidating Trustee in his discharge of his duties. A former accountant employed by the Debtors has offered his

services to the Trustee in exchange for $25.00 per hour. In addition, the President and Chief Executive Officer will continue to cooperate to facilitate the orderly liquidation of the Debtors' assets.

o.       Notwithstanding any provisions of the Plan, the Liquidating Trustee will be compensated for legal services provided in connection with his services as Liquidating Trustee, at his normal hourly rate for legal services provided plus actual disbursement expenses, but will not seek a commission or other payment for time spent discharging his fiduciary duties as Liquidating Trustee. Payment of all such compensation of the Liquidating Trustee or his counsel shall be subject to prior application to and approval by the Bankruptcy Court.

p.       The Liquidating Trustee shall serve with a "Trustee" fidelity bond similar to that required in U.S. Trustee Guidelines but payable to the beneficiaries of the Liquidating Trust, in an amount equal to 110% of the amount of assets it is holding on a quarterly basis, which amount shall be reimbursable in immediately available funds. The requirement for a bond shall continue until all Assets are distributed.

5.       Injunction. As of the Confirmation Date, all Entities that have held, currently hold or may hold a Claim or other debt or liability against the Debtor affected by the Plan are enjoined from taking any action to collect or recover in any manner on account of any such Claims, debts or liabilities from any or all of the Assets, except as otherwise provided in the Plan.

6.       Res Judicata. Pursuant to Section 1141(d)(3) of the Bankruptcy Code, confirmation will not discharge Claims or Interests against the Debtors; provided, however, that, except as otherwise set forth in the Plan, on and after the Confirmation Date, all persons and

entities that have held, hold or may hold (a) any Claim against or Interest in the Debtors or Debtors in Possession provided for in a Plan confirmed by Final Order of the Bankruptcy Court shall with respect to any such Claim or Interest be permanently enjoined from and against (i) commencing or continuing in any manner any suit, action or other proceeding of any kind against the Debtors, the Debtors in Possession, or Debtors' officers and directors, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Debtors in Possession, or Debtors' officers and directors, (iii) creating, perfecting or enforcing any lien or encumbrance of any kind against the Debtors, the Debtors in Possession, or Debtors' officers and directors, or against any of their properties or interests in property, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or the Debtors in Possession or against any property or interest in property of the Debtors, the Debtors in Possession, or the Estate, as such Plan confirmed by Final Order of the Bankruptcy Court shall be res judicata as to any of the foregoing acts concerning or related to any such Claim or Interest administered by the Plan, and (b) any Claim, right, action, Cause of Action against or Interest against the Debtors, the Debtors in Possession, or Debtors' officers and directors shall be permanently enjoined from and against commencing or continuing any suit, action or proceeding against, asserting or attempting to recover any Claim against or Interest in, or otherwise affecting the Debtors, the Debtors in Possession, or Debtors' officers and directors, with respect to any matter that is the subject of the Plan.  The foregoing enjoinment of the commencement or continuation of any suit, action or proceeding against, asserting or attempting to recover any Claim against or Interest in, or otherwise against the Debtors, the Debtors in Possession, or Debtors' officers and directors in no way forecloses the commencement or continuation of  valid Chapter 5 claims under the

Bankruptcy Code against the Debtors, the Debtors in Possession, or Debtors' officers and directors.

7.      Exculpation.  The Debtors, the Committee, the Disbursing Agent, and their respective members, officers, directors, employees and agents (including any attorneys, financial advisors, investment bankers and other Professionals retained by any such persons) shall have no liability to any holder of any Claim or Interest or any other person for any act or omission in connection with, or arising out of, this Case, including, without limitation, with respect to the Disclosure Statement, the Plan, the solicitation of votes for and the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, objections to Claims, the pursuit of Avoiding Power Causes of Action, acts of the Liquidating Trustee, choice of the Liquidating Trustee, or the property to be distributed under the Plan, except for any act or omission constituting bad faith, self dealing, breach of fiduciary duty, reckless or willful misconduct, or gross negligence (including malpractice constituting gross negligence) as determined by a final court order and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan, the Bankruptcy Code, and applicable law.

8.      Notice Of Order.  Within seven business days after the date of entry of this Confirmation Order, pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtors shall mail to all parties in interest, including all Creditors and Interest Holders, the United States Trustee for the Northern District of New York, the Securities & Exchange Commission and the Internal Revenue Service, notice of the entry of this Confirmation Order, and no further notice with regard to such matters shall be required.

9.     Retention Of Jurisdiction.  Notwithstanding the confirmation of the Plan, the Court retains jurisdiction over all matters arising out of, or relating to, the Debtor's Chapter 11 Case, including those specified in Section 11.03 of the Plan.

10.     Reports.  If necessary, any reports required by § 1106(a)(7) of the Bankruptcy Code shall be filed by the Liquidating Trustee as directed by any separate order of this Court. Such reports shall contain adequate information concerning the final and complete consummation of this Case.

11.     United States Trustee Fees.  The Liquidating Trustee shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), when due until the Case is converted, dismissed, or closed by Court Order and simultaneously provide to the United States Trustee an appropriate report indicating the cash disbursements for the relevant subsequent calendar quarters until the case is converted, dismissed or closed by Court Order.

12.     Future Hearing.  The Liquidating Trustee must appear before the Court on January 20, 2010 at 10:30 a.m. and show cause why the report of substantial consummation and motion for final decree have not been filed with the Court.

Doc # 01-2305092.5

# # #

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re

LINCOLN LOGS LTD.                                Chapter 11
                                                 Main Case No. 08-13079
                                                 Jointly Administered

                        Debtor(s)
_____

In re

SNAKE RIVER LOG HOMES, LLC                       Case No. 08-13080

                        Debtor(s)
_____

**FIRST AMENDED CHAPTER 11 JOINT PLAN OF LIQUIDATION FOR
LINCOLN LOGS LTD. AND SNAKE RIVER LOG HOMES, LLC**

Dated:  May 4, 2009

PHILLIPS LYTLE LLP
Attorneys for Debtors and Debtors in Possession
Suite 3400
One HSBC Center
Buffalo, New York  14203-2887
Telephone No.:  (716) 847-8400

and

Omni Plaza
30 South Pearl Street
Albany, New York 12207
Telephone No. (518) 472-1224

Lincoln Logs Ltd. ("Lincoln") and Snake River Log Home, LLC ("Snake River"), Debtors and Debtors in Possession in this Chapter 11 case (collectively, the "Debtors") hereby propose for themselves the following Chapter 11 Joint Plan of Liquidation pursuant to Section 1121(a) of the Bankruptcy Code.

This Plan provides for an absolute priority distribution to holders of Claims.

## ARTICLE 1

## DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings specified below (such meanings to be equally applicable to the singular and plural forms of the terms defined):

**Administrative Expense Claim(s)** means a Claim for payment of any costs or expenses of administration of the Case incurred after the commencement of the Case allowable under Section 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary expenses of preserving the estates of the Debtors; (b) the actual and necessary expenses of operating the businesses of the Debtors (such as wages, salaries for services rendered); (c) indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of its business, the acquisition or lease of property, or the rendition of services to the Debtors; (d) allowances of compensation for legal and other services and reimbursement of expenses awarded pursuant to Sections 330(a), 331 and 503(b) of the Bankruptcy Code, and (e) all fees or charges assessed against the Estate under Section 1930, title 28, United States Code; provided, however, that an Exempt Tax shall not be an Administrative Expense Claim.

**Allowed**, when used as an adjective preceding the words "Claim" or "Interest," means any Claim against or Interest in the Debtors: (a) proof or application for allowance of which was (i) Filed on or before the date designated by the Bankruptcy Court as the last date for Filing a Proof of Claim against or Proof of Interest in the Debtors, (ii) later Filed with Bankruptcy Court with leave after notice and a hearing, or (iii) if no Proof of Claim or Proof of Interest or application for allowance was Filed, which Claim or Interest has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent; and (b) which (i) is due and payable and as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or the Bankruptcy Court, or (ii) as to which any objection has been determined by Final Order of the Bankruptcy Court to the extent such objection has been resolved in favor of the Holder of such Claim or Interest. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any claim that the Debtors may hold against the Holder thereof, to the extent such claim may be set off pursuant to applicable law.

**Assets** means all property of the Estates of the Debtors.

**Avoiding Power Causes of Action** means rights and remedies accruing to the Debtors pursuant to 11 U.S.C. §§ 544(b), 547, 548, 549, 550, 553(b).

**Ballot(s)** means the ballots accompanying the Disclosure Statement and the Plan upon which Creditors and other parties entitled to vote on the Plan shall have indicated their acceptance or rejection of the Plan.

**Bankruptcy Code** means Sections 101 et. seq. of Title 11 of the United States Code.

**Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of New York or any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom, or any successor thereto that may be established by act of Congress or otherwise, and that has competent jurisdiction over the Case.

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Case.

**Bar Date** is the last date for Filing Proofs of Claim and Proofs of Interest as fixed by the Bankruptcy Court.

**Bidding Procedures Order** means the Order of this Court entered December 24, 2008 (Docket No. 140) approving procedures for the auction of all Assets of the Debtors.

**Business Day** means any day except Saturday, Sunday or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

**Case** means the above-captioned jointly administered cases under Chapter 11 of the Bankruptcy Code in which Lincoln and Snake River respectively, are the Debtors.

**Causes of Action** means all legal and equitable claims, demands, or causes of action held by the Debtors against any entity, including Avoiding Power Causes of Action.

**Cash** means cash and cash equivalents held by the Debtors.

**Claim** means a "claim" within the meaning of Section 101(5) of the Bankruptcy Code.

**Class** means a group of substantially similar Claims or Interests as classified in the Plan pursuant to Section 1123(a)(1) of the Bankruptcy Code.

**Closing Date** is the date on which the Case is closed by order or final decree of the Bankruptcy Court pursuant to Section 350 of the Bankruptcy Code.

**Committee** means the Official Committee of Unsecured Creditors appointed in the Case pursuant to Section 1102 of the Bankruptcy Code.

**Common Stock** means the common stock of the Debtors issued and outstanding as of the Petition Date, and includes any options or warrants with the right to acquire common stock of the Debtors.

**Confirmation Date** means the date the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**Confirmation Hearing** means the hearing before the Bankruptcy Court to consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.

**Confirmation Order** means an order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**Contingent or Unliquidated Claims** mean Claims listed as contingent or unliquidated in the Debtors' Schedules or in the Proof of Claim or Proof of Interest filed by any Creditor.

**Creditor** means any Entity that has a Claim against the Debtors that arose on or before the Petition Date or a Claim against the Estate of any kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code.

**Debtors** means Lincoln and Snake River, as debtors and debtors in possession, through the date on which the Confirmation Order is entered.

**Disallowed**, when used as an adjective preceding the words "Claim" or "Interest", means any Claim or Interest, or portion of either thereof, which (a) is listed in the Debtors' Schedules as disputed, contingent or unliquidated and in respect of which a Proof of Claim or Proof of Interest is not Filed in a timely manner, (b) is not listed in the Schedules and in respect of which a Proof of Claim or Proof of Interest was not Filed in a timely manner, or (c) has been disallowed by a Final Order.

**Disbursing Agent** means the party authorized to make distributions in accordance with the Plan and Bankruptcy Rule 3020(a), which party shall be Liquidating Trustee.

**Disputed Claim** means (a) a Claim which is not an Allowed Claim, or (b) a Claim or portion thereof timely Filed prior to the Bar Date or deemed timely Filed under applicable law or under the Plan, as to which an objection Filed or to be Filed (as set forth herein) by the Debtors has not been withdrawn on or before any date fixed for Filing such objections by the Plan, the Bankruptcy Court, the Bankruptcy Code, or the Bankruptcy Rules, and which has not been denied by a Final Order. To the extent an objection relating to the allowance of only a part of the Disputed Claim has been timely Filed or deemed timely Filed, such Claim shall be a Disputed Claim only to the extent of the amount disputed in the objection. Prior to the time that an objection has been or may be timely Filed, a Claim shall be considered

a Disputed Claim to the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of the Claim listed in the Schedules as other than disputed, contingent or unliquidated.

**Effective Date** means a Business Day determined by the Debtors and upon which (a) no stay of the Confirmation Order is in effect and (b) the conditions to the Effective Date set forth in Section 7.02 of the Plan have been satisfied or waived. The Debtors shall file a notice of the Effective Date within three (3) days after its occurrence, which shall be served upon parties in interest.

**Entity** means an "entity" within the meaning of Section 101(15) of the Bankruptcy Code.

**Estate(s)** means the estates of the Debtors created upon the commencement of the Case pursuant to Section 541 of the Bankruptcy Code.

**Exempt Tax** means any stamp, recording or similar tax or charge (including any penalties, interest or additions thereto) within the meaning of Section 1146(a) of the Bankruptcy Code which may be imposed by the laws of any state upon the transactions contemplated under, or necessary for the success of, the Plan, including without limitation, any mortgage recording, securities transfer, deed transfer, documentary transfer or gains taxes.

**File, Filed, Filing or Files** shall mean file, filed, filing or files, respectively, with the Bankruptcy Court in the Case.

**Final Order** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on the docket of such court, that has not been reversed or stayed, and as to which: (a) the time to appeal or petition for certiorari has expired and no timely-filed appeal or petition for certiorari is pending, or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

**General Unsecured Claim** means any Claim against the Debtors which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date, and which is not an Administrative Expense Claim, Administrative Operating Expense Claim, or Secured Claim.

**Holder** means any entity holding a Claim or Interest, and includes the beneficial Holder of such Claim or Interest.

**Interest** means any and all rights arising out of the ownership of Common Stock, including all Claims against the Debtors resulting from the rescission of a purchase or sale of Common Stock, for damages arising from the purchase or sale of Common Stock or for reimbursement or contribution allowed under Section 502 of the Bankruptcy Code on account of such a claim, and all rights arising out of contracts, options or warrants to purchase or sell Common Stock.

**Joint Disclosure Statement** means the Debtors' written disclosure statement and its appendices, as amended, supplemented or further modified from time to time, with respect to the Plan.

**Liquidating Trust** means the liquidating trust for Debtors described in Article 7 of the Plan and governed by the Liquidating Trust Agreement.

**Liquidating Trustee** means one or more persons selected by the Committee, in consultation with the Debtors, and subject to Court approval, to act as the trustee of the Liquidating Trust pursuant to the terms and conditions of the Plan and the Liquidating Trust Agreement.

**Liquidating Trust Agreement** means that certain agreement, dated as of the date of confirmation of the Plan, between Debtors and the Liquidating Trustee that governs the operation of the Liquidating Trust.

**Liquidating Trust Assets and Claims** means any property interests, Claims or causes of action or potential causes of action belonging to Debtors, limited to (i) the potential derivative claims, and (ii) potential claims of action against the Debtors.

**Local Rules** means the Local Bankruptcy Rules of the Bankruptcy Court, as applicable to the Case.

**Liens** means any and all liens, including encumbrances, security interests, rights of setoff, licenses, leases, mortgages, pledges, charges, rights of first refusal, and restrictions of any kind or nature whatsoever.

**Petition Date** means September 19, 2008, the date of the Debtors' Filing of the voluntary petitions for relief commencing this Case.

**Plan** means this Chapter 11 Joint Plan of Liquidation and all schedules and exhibits thereto for the Debtors, as amended, supplemented or further modified from time to time.  Any appendices to the Plan are incorporated into and made a part hereof as if fully set forth herein.

**Priority Claim** means any Claim to the extent entitled to priority in payment under Sections 507(a)(2)- (9) of the Bankruptcy Code.

**Professionals** means Entities whose appointment has been approved by final order of the Bankruptcy Court pursuant to Bankruptcy Code Section 327 prior to entry of the Confirmation Order.

**Proof of Claim** or **Proof of Interest** means a Filed Proof of Claim or Proof of Interest.

**Record Date** means the date on which Creditors entitled to vote on the Plan are determined by their record ownership of Claims, which date shall be the date of Filing of the Plan.

**Sale Order**. The Order of the Bankruptcy Court entered February 6, 2009 (Docket No. 167) providing for the sale of Lots 2, 3, 8, 9a, 9b, 9c, 10, 11, 5 and 7, 6 and 12, as more specifically described in the Sale Order.

**Schedules** means the Schedules of Assets and Liabilities and Statements of Financial Affairs, as amended, supplemented or further modified from time to time, Filed by the Debtors in accordance with the Bankruptcy Rules.

**Secured Claim** means a Claim that is secured by a Lien on property in which the Estates have an interest or that is subject to setoff under Bankruptcy Code § 553, to the extent of the value of the claimholder's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code § 506(a).

**Unclaimed Distribution** means, in respect of any Class of Claims, all Cash or other property deemed to be "Unclaimed Distributions" pursuant to Section 8.06 the Plan.

**Document References**. All references to documents shall include all addenda, exhibits and schedules attached thereto or referred to therein.

**Other Definitions**. A term used and not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning set forth therein. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. The word "including" shall mean "including, without limitation." The singular shall include the plural and vice versa unless the context otherwise requires.

## ARTICLE 2

## ADMINISTRATIVE CLAIMS

2.01 **Administrative Expense Claims**. Administrative Expense Claims will be paid in full, in Cash, within twenty (20) days of confirmation of the Plan by Final Order (or as soon thereafter as is practicable), or in the case of Professionals as otherwise provided by Court Order or, if such Claim becomes Allowed after such date, within five (5) days after such Claim becomes Allowed, unless other payment terms are agreed to between the Debtors and the Holder of any such Claim. A current schedule of the Claims in this Class and their status is attached to the Disclosure Statement as Exhibit B. Exhibit B also includes a list of Holders of Administrative Expense Claims who have agreed to defer payment of their Administrative Expense Claims until there are sufficient proceeds in the Estate to pay such Claims. Any fees due and owing to the United States Trustee shall be paid as due, or as soon thereafter as practicable.

2.02    **Bar Date for Administrative Expense Claims**.

(a)    **In General**.  Unless otherwise ordered by the Bankruptcy Court, and other than Administrative Expense Claims of Professionals, requests for payment of Administrative Expense Claims must be Filed and served on the Debtors no later than thirty (30) days after the Effective Date.  Any Entity that is required to File and serve a request for payment of an Administrative Expense Claim and that fails to timely File and serve such request, shall be forever barred, estopped and enjoined from asserting such Claim against the Debtors, the Estates of the Debtors or its respective property.

(b)    **Professionals**. Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered before the Confirmation Date shall File an application for allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Confirmation Date.  Objections to any application of Professionals or other Entities for compensation or reimbursement of expenses must be Filed no later than twenty (20) days after the Filing of such application.  To the extent such application is approved by the Bankruptcy Court, the applicant shall be entitled to an Allowed Claim to be paid in full within five (5) days of the entry of an order by the Bankruptcy Court approving such application or as soon as such funds are available.

# ARTICLE 3

# CLASSIFICATION OF CLAIMS AND INTERESTS

3.01    **Class 1 –Secured Claim**:  Class 1 is the allowed secured claim of the First Pioneer Farm Credit, ACA ("First Pioneer") against Lincoln.  Class 1 is not impaired.

3.02    **Class 2 - Priority Claims:**  Class 2 consists of all Allowed Priority Claims against Lincoln.  Class 2 is not believed to be impaired.

3.03    **Class 3 - General Unsecured Claims – Lincoln Trade Vendors:**  Class 3 consists of all Allowed General Unsecured Claims of trade vendors against Lincoln.  Class 3 is impaired.

3.04    **Class 4 - General Unsecured Claims – Lincoln Customers:**  Class 4 consists of all Allowed General Unsecured Claims of customers against Lincoln.  Class 4 is impaired.

3.05    **Class 5 - Common Stock and Interests and Claims Relating Thereto:** Class 5 consists of all Common Stock Interests in the Debtors and Claims related thereto.  Class 5 is impaired.

3.06    **Class 6 – General Unsecured Claims - Snake River**.  Class 6 consists of all Allowed General Unsecured Claims against Snake River.  Class 6 is impaired.

3.07  **Classification Rules**.   A Claim is in a particular Class only to the extent that the Claim qualifies within the description of Claims of that Class, and such Claim is in a different Class to the extent that the remainder of the Claim qualifies within the description of the different Class.  Pursuant to Section 1123(a)(4) of the Bankruptcy Code, all Allowed Claims of a particular Class shall receive the same treatment unless the Holder of a particular Allowed Claim agrees to a less favorable treatment for such Allowed Claim.  The inclusion of a Creditor by name in any Class is for purposes of general description only, and includes all Entities claiming as beneficial interest holders, assignees, heirs, devisees, transferees or successors in interest of any kind of the Creditor named.

## ARTICLE 4

## TREATMENT OF CLASSES UNDER THE PLAN

4.01  **Class 1 – Secured Claims**:  Each Holder of an Allowed Secured Claim shall be paid by the Disbursing Agent the Allowed amount of such Claim, including all applicable interest and other charges to which the Holder of such Allowed Claim may be entitled under applicable law or contract, to the extent permitted under the applicable provision of Section 507(a) of the Bankruptcy Code, in Cash.  First Pioneer will be paid its share of the proceeds from the sale of the Debtors' Assets sold pursuant to the Sale Order within five (5) business days of the determination of the net proceeds available for distribution as a result of each such sale.  The remainder of First Pioneer's Claim shall be paid on the Effective Date (or as soon thereafter as applicable).

4.02  **Class 2 - Priority Claims**:  Each Holder of an Allowed Priority Claim shall be paid by the Disbursing Agent the Allowed amount of such Claim, including all applicable interest and other charges to which the Holder of such Allowed Claim may be entitled under applicable law or contract, to the extent permitted under the applicable provision of Section 507(a) of the Bankruptcy Code, in Cash, on the later of: (a) the Effective Date (or as soon thereafter as is practicable) or (b) the first Business Day after such Claim becomes an Allowed Claim (or as soon thereafter as is practicable).  A current schedule of the Claims in this Class and their status is attached to the Disclosure Statement as Exhibit C.

4.03  **Class 3 - General Unsecured Claims – Lincoln Trade Vendors**:  Holders of General Unsecured Claims in this class shall be paid their pro rata share of Lincoln's remaining cash (after payment of Allowed Secured Claims, Allowed Administrative Expense Claims and Allowed Priority Claims, and after reserving the appropriate amounts for Disputed Claims and any other Reserve provided for under this Plan) by the Disbursing Agent payable on the later of: (a) the Effective Date (or as soon thereafter as is practicable) or (b) the first Business Day after such Claim becomes on Allowed Claim (or as soon thereafter as is practicable).  A current schedule of the Claims in this Class and their status is attached to the Disclosure Statement as Exhibit D.

4.04  **Class 4 - General Unsecured Claims – Lincoln Customers**:  Holders of General Unsecured Claims in this class shall be paid their pro rata share of Lincoln's remaining cash (after payment of Allowed Secured Claims, Allowed Administrative Expense Claims and

Allowed Priority Claims, and after reserving the appropriate amounts for Disputed Claims and any other Reserve provided for under this Plan) by the Disbursing Agent payable on the later of: (a) the Effective Date (or as soon thereafter as is practicable) or (b) the first Business Day after such Claim becomes on Allowed Claim (or as soon thereafter as is practicable). A current schedule of the Claims in this Class and their status is attached to the Disclosure Statement as Exhibit E.

4.05 **Class 5 - Common Stock Interests**: Holders of Common Stock Interests in the Debtors shall receive no distribution under the Plan pursuant to said Interests.

4.06 **Class 6 – General Unsecured Claims – Snake River**. Holders of General Unsecured Claims in this class shall be paid their pro rata share of Snake River's remaining cash (after payment of Allowed Secured Claims, Allowed Administrative Expense Claims and Allowed Priority Claims, and after reserving the appropriate amounts for Disputed Claims and any other Reserve provided for under this Plan) by the Disbursing Agent payable on the later of: (a) the Effective Date (or as soon thereafter as is practicable) or (b) the first Business Day after such Claim becomes on Allowed Claim (or as soon thereafter as is practicable). A current schedule of the Claims in this Class and their status is attached to the Disclosure Statement as Exhibit F.

4.07 **Controversy Concerning Impairment**. In the event of a controversy as to whether any Creditor or Holder of an Interest or Class of Creditors or Class of Holders of Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

4.08 **Injunction**. The treatment of, and consideration, if any, to be received by Holders of Allowed Claims and Allowed Interests under the Plan when accepted, shall enjoin such Holders from taking any action to collect or recover in any manner on account of any such Claims, debts or liabilities from any or all of the Assets, except as otherwise provided in the Plan.

## ARTICLE 5

## ACCEPTANCE OR REJECTION OF THE PLAN

5.01 **Impaired Classes Entitled To Vote**. Classes 3, 4 and 6 are impaired under the Plan. Each Holder of an Allowed Claim or Allowed Interest in Classes 3, 4 and 6 shall be entitled to vote to accept or reject the Plan. Class 5 is deemed not to have accepted the Plan.

5.02 **Acceptance by an Impaired Class of Claims**. A Class of Creditors shall have accepted the Plan if Creditors holding at least two-thirds in the aggregate dollar amount and more than one-half in number of the Allowed Claims or Allowed Interest of such Class that have accepted or rejected the Plan, vote to accept the Plan.

5.03 **Presumed Acceptance of Plan by Unimpaired Classes**. Classes 1 and 2 are unimpaired under the Plan and, therefore, are conclusively presumed to accept the Plan pursuant to Section 1126(f) of the Bankruptcy Code, and do not have a right to vote on the Plan.

# ARTICLE 6

## MEANS FOR IMPLEMENTATION OF THE PLAN

6.01 **Common Stock**.  On the Effective Date, all the Common Stock of the Debtors will be cancelled.

6.02 **Cash Distributions**.  On the Effective Date or as soon thereafter as is practicable, the Debtors shall transfer to the Disbursing Agent or the Liquidating Trustee an amount of Cash necessary to pay any remaining Secured Claims, Administrative Expense Claims, Priority Claims and General Unsecured Claims, to the extent such Claims are Allowed Claims then due.  In the case of any such Claim that is not an Allowed Claim on the Effective Date, the Disbursing Agent shall remit payment promptly to the Holder of such Claim when such Claim becomes an Allowed Claim.

6.03 **Source of Funds**.  As a source of funds for Cash distributions to Creditors under the terms of the Plan, the Debtors has liquidated or will liquidate its interest in its Assets and pursue Avoiding Power Causes of Action.

The auction of the following Assets was held on January 28, 2009 at 1:30 p.m. ("Auction") and the following parties were the high bidders at the Auction of the Lots as amended:

| Lot # (as defined in the Bidding Procedures Order) | Successful Bidder(s) | Sale Price |
|---|---|---|
| 2, 3, 8, 9a[2], 9b, 9c, 10[3] and 11 ("Bulk Bid") | The Stephenson Group | $2,400,000 |
| 5 and 7 | James Peck | $100,000 |
| 6 | Kenneth Pasternak | $100,000 |
| 12 | Yellowstone Log Homes | $5,000 |
| | | $2,605,000 |

---

[2] With respect to Lots 9(a) and 9(b), this sale is limited to the assets in those Lots located in New York State.  The remaining assets in these Lots that are not being purchased by The Stephenson Group ("California Assets") will be sold via an internet listing service such as eBay and the ultimate sale of such assets will be approved upon entry of a Stipulation and Order agreed to and executed by the Official Committee of Unsecured Creditors, First Pioneer, and the Debtors, or as otherwise approved by an entry of an order of the Court.

[3] The description of Lot 10 was amended prior to the auction to remove the Debtors' membership interests in AFI and add all of AFI's assets.

The sale of the Lots set forth above was approved by Order of the Court dated February 6, 2009 (Docket No. 167) ("Sale Order"). The sales to Yellowstone Log Homes, the Stephenson Group, James Peck and Kenneth Pasternak were all closed by March 6, 2009. The Sale Order provides in pertinent part that the parties agree that $61,600 of the proceeds from the sale of the Debtors' motor vehicles in Lot 9(a) are not subject to First Pioneer's lien and that the remaining net proceeds from the sale of the Lots sold thereby, calculated after payment of closing costs and allowed brokerage fees, would be divided as follows: i) 90% to First Pioneer; ii) 5% to unsecured creditors; and iii) 5% to the Estate for payment of Administrative Expense Claims.

## Value of the Remaining Assets

### Lot 4 Ulster

Lincoln is a fifty percent (50%) owner of a certain vacant real property lot located on Forest Hill Drive in Ulster, New York ("Property"). Justin Heller of Heller & Nolan, counsel to the Official Committee of Unsecured Creditors ("Committee"), has retained a real estate broker, at the expense of First Pioneer Farm Credit, ACA, to determine the value of the Property and has determined that the Property is unable to be subdivided. The Committee has filed a complaint seeking approval to sell the entire Property, notwithstanding Lincoln's one half ownership interest, with Lincoln to retain 50% of the proceeds.

### Auburn, California Model Home

The Auburn, California model home is currently listed for sale at $950,000. There have been three offers on the model home which were unacceptable to the Committee.

### Lincoln Public Shell

Certain Creditors have alleged that there is value associated with Lincoln's status as a publicly-traded company and that "once wiped of its debts by reason of this Chapter 11 proceeding, [Lincoln] will have substantial value as a clean public shell."

As reflected in the Disclosure Statement and Plan, Debtors are liquidating substantially all of their assets and do not intend to engage in business following the completion of these Chapter 11 proceedings. Debtors have not sought a discharge of their liabilities, as they are not entitled to a discharge under the applicable terms of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Code"). In light of the foregoing, Debtors disagree with such Creditors' contentions that Lincoln's debts will be wiped out by reason of this Chapter 11 proceeding and that, at the conclusion of this Chapter 11 proceeding Lincoln will have substantial value as a "clean public shell." On the contrary, Lincoln will not receive a discharge and consequently, those claims and liabilities that have not been satisfied as part of a confirmed Plan will remain with Lincoln following confirmation of the Plan. Moreover, it is unclear whether all of Lincoln's liabilities have been identified and/or have been accurately quantified. With the continued existence of these liabilities, known and unknown, Lincoln will have minimal, if any, value as an assetless public shell.

A summary of the estimated sources of proceeds and estimated distributions are as follows:

Estimated Proceeds - Lincoln

| Sales Closed by March 6, 2009 | | Estimated Net Proceeds | |
|---|---|---|---|
| | Bulk Sale of Manufacturing Facility | $2,395,025.12 | |
| | Lots 5 and 7 | $99,271.55 | |
| | Lot 6 | $100,000.00 | |
| Assets Yet to be Sold | | | |
| | Lot 1 California Model Home | $855,000.00 | List price less broker's commission* |
| | Lot 4 Ulster NY Vacant Lot | $50,000.00 | |
| | Lots 9a and 9b located in CA | $15,000.00 | |
| | Judgment Against Defendant | $100,000.00 | |
| | Cash | $30,000.00 | |
| | NY Sliver Property | $9,900.00 | List price less broker's commission* |
| | Total | $3,654,196.67 | |

*Whether or not commissions are actually due is a matter yet to be determined and subject to Court approval

Estimated Distributions - Lincoln

| | Amount of Claims Lincoln Asserts are Allowed | Estimated Distribution | Approximate Percentage | |
|---|---|---|---|---|
| Administrative Expense | $289,022.79 | $289,022.79 | 100.00% | |
| Class 1 | $2,649,058.87 | $2,649,058.87 | 100.00% | |
| Class 2 | $400,810.47 | $400,810.47 | 100.00% | |
| Class 3 | $1,419,368.07 | $80,292.31 | 5.66% | ** |
| Class 4 | $4,154,430.91 | $235,012.23 | 5.66% | ** |
| Class 5 | $0.00 | $0.00 | | |
| Total | | $3,624,196.67 | | |

**Unsecured Creditors are also to receive their pro rata share of avoidance action recoveries which amount has been estimated to be at least $500,000 which would increase unsecured distributions to 14.63%

Estimated Proceeds - Snake River

| Closed February 7, 2009 | | Estimated Net Proceeds |
|---|---|---|
| | Personal Property Assets | $5,000.00 |

Estimated Distributions - Lincoln

| | Amount of Claims Lincoln Asserts are Allowed | Estimated Distribution | Approximate Percentage |
|---|---|---|---|
| Class 6 | $133,676.25 | $2,500.00 | 1.87% |

The Debtors have made considerable progress toward completing the sales of most of their assets, such that the filing of this Plan and Disclosure Statement is now appropriate.

## ARTICLE 7

## MEANS FOR IMPLEMENTATION OF THE PLAN

On the Effective Date (or as soon thereafter as is practicable), or unless provided for earlier pursuant to the terms hereof, the Disbursing Agent shall distribute Cash from the Debtors' account(s) to the holders of Allowed Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Claims and Allowed General Unsecured Claims, as provided under the terms of the Plan, in satisfaction of such Claims.

As a source of funds for Cash distributions to Creditors under the terms of the Plan, the Debtors have liquidated or will liquidate their interests in various Assets as described in Section 6.03 of the Plan and above and the Liquidating Trust will pursue all Liquidating Trust Assets and Claims.

7.01 **Liquidating Trust**.

(a) **Establishment of the Liquidating Trust**. On or before the Confirmation Date, Debtors shall execute a Liquidating Trust Agreement with the Liquidating Trustee and shall take all other steps necessary to establish a Liquidating Trust. On the Confirmation Date or as soon thereafter as possible, and in accordance herewith, Debtors shall transfer to the Liquidating Trust all of its right, title and interest in the Liquidating Trust Assets and Claims and an amount of Cash for funding the Liquidating Trust as provided herein. In connection with the above-described rights and causes of action, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to Liquidating Trust shall vest in the Liquidating Trustee and is representatives. Notwithstanding the occurrence of the Confirmation Date, to the extent that operating assets of active businesses remain unsold, such assets may be retained by Debtors and not delivered into the Liquidating Trust pending the liquidation of such assets. The Liquidating Trustee shall be appointed by the Committee, in consultation with the Debtors, and subject to Court approval and shall be the representative of the estate under section 1123(b)(3) of the Bankruptcy Code.

(b) **Purpose of the Liquidating Trust**. The Liquidating Trust shall be established for the sole purpose of liquidating its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

(c) **Reserve Accounts for Disputed Claims**. On and after the Confirmation Date, the Liquidating Trustee shall allocate to the Disputed Claims reserve: (i) Cash in an aggregate amount sufficient to pay to each holder of a Disputed Unsecured Claim the amount that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date or any Subsequent Distribution Date, (ii) net earnings on such Cash and (iii) any other property distributed in respect of such beneficial interests in the

Liquidating Trust.  All Cash and Cash equivalents and earnings thereon shall be used to satisfy any expenses incurred in connection with the maintenance of the Disputed Claims reserve, including taxes payable by the Disputed Claims reserve, if any, and repayment of any tax advances.

(d)     **Funding Expenses of the Liquidating Trust**.  In accordance with the Liquidating Trust Agreement and any other agreements entered into in connection therewith, on the Confirmation Date or as soon thereafter as possible, Debtors shall, without limiting its obligation to transfer assets in accordance with the Plan, transfer an amount of Cash (in addition to any Cash allocated to the Disputed Claims reserve) to the Liquidating Trust reasonably necessary to fund the administrative expenses of the Liquidating Trust.  To the extent such amount subsequently proves insufficient, subject to the terms of the Liquidating Trust Agreement the Liquidating Trustee may borrow additional amounts to fund any reasonably necessary administrative expenses (including, but not limited to, any taxes imposed on the Liquidating Trust or fees and expenses in connection with its liquidations).

(e)     **Transfer of Assets**.  The transfer by Debtors of the Liquidating Trust Assets and Claims (and an amount of Cash as provided herein) to the Liquidating Trust shall be made, as provided herein, for the benefit of holders of Allowed Claims against Debtors whether Allowed on or after the Confirmation Date.  In this regard, the assets to be held by the Liquidating Trust initially will be deemed transferred to holders of Allowed Claims against Debtors, and, in respect of any Disputed Claims, allocated to the Disputed Claims reserve. Immediately thereafter and on behalf of such recipients, Debtors shall transfer such assets to the Liquidating Trust in exchange for the undivided beneficial interests in the Liquidating Trust for the benefit of holders of such Claims.  Upon transfer of the Liquidating Trust Assets and Claims, Debtors shall have no interest in or with respect to the Liquidating Trust Assets and Claims or the Liquidating Trust.

It is the intention of Debtors that all of its right, title and interest in the Liquidating Trust Assets and Claims be transferred to the Liquidating Trust on the Confirmation Date.  The failure to transfer one or more assets constituting a Liquidating Trust Asset or Claim on the Confirmation Date, however, shall not preclude Debtors from effecting such transfer at a later date.  Debtors by any of its authorized representatives and/or by the Liquidating Trustee shall be authorized and empowered to execute, deliver and cause the recording of such deeds, titles or other instruments of conveyance as are necessary to effect the transfer of such Liquidating Trust Assets and Claims to the Liquidating Trust.

For federal income tax purposes, all parties including, without limitation, the Debtors, the Liquidating Trustee and the holders of Allowed Claims who are beneficiaries of the Liquidating Trust, shall treat the transfer of assets to the Liquidating Trust, in accordance with the terms of the Plan and the Liquidating Trust Agreement (and in respect of the Disputed Claims, the Disputed Claims reserve), as a transfer to the holders of Allowed Claims in satisfaction of such Claims, followed by a transfer by such holders to the Liquidating Trust, and the beneficiaries of the Liquidating Trust shall be treated as the grantors and owners thereof.

(f)     **Liquidation of Assets, Responsibilities of Liquidating Trustee**.  In accordance with the provisions of the Liquidating Trust Agreement, the Liquidating Trustee, in its reasonable business judgment, shall, in an expeditious but orderly manner, liquidate and convert to Cash the assets of the Liquidating Trust, make timely distributions and not unduly prolong the duration of the Liquidating Trust.  The liquidation of the Liquidating Trust Assets and Claims may be accomplished either through the sale, prosecution, compromise and settlement, abandonment or dismissal of the Liquidating Trust Assets and Claims.  Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall be entitled to determine whether or not to pursue any of the claims comprising the Liquidating Trust Assets and Claims, as it determines is in the best interests of the beneficiaries of the Liquidating Trust and consistent with the purposes of the Liquidating Trust and subject to the terms of the Liquidating Trust Agreement.  To the extent that the Liquidating Trustee takes or fails to take any action that a creditor believes is appropriate or inappropriate, as the case may be, such creditor may seek relief from the Bankruptcy Court.  Additionally, to the extent that a holder of a beneficial interest in the Liquidating Trust receives a recovery in respect of its Claim from a source other than the Liquidating Trust, such as the proceeds of Debtors' insurance policies or from a third party, the Liquidating Trustee may, in its reasonable discretion, and after written notice and an opportunity to be heard by the Bankruptcy Court in accordance with section 102 of the Bankruptcy Code, reduce such holder's Claim against Debtors by the amount of such recovery to effectuate a more equitable distribution among the holders of Claims.  The Liquidating Trustee may incur any reasonable and necessary expenses arising from or related to the liquidation and conversion to Cash of the Liquidating Trust Assets and Claims.  The professional fees of the Liquidating Trustee, as well as any compensation proposed to be paid to the Liquidating Trustee in respect of the services to be rendered pursuant to the Liquidating Trust Agreement shall be paid pursuant to the Liquidating Trust Agreement.

The Liquidating Trustee shall be designated in the Confirmation Order and the Liquidating Trust Agreement and shall have the power to (i) liquidate or prosecute for the benefit of the Liquidating Trust, the Liquidating Trust Assets and Claims (whether such suits are brought in the name of the Liquidating Trust or otherwise) and (ii) administer the assets of the Liquidating Trust and otherwise perform the functions and take the actions provided for or permitted in the Liquidating Trust Agreement or in any other agreement executed by the Liquidating Trustee pursuant to the Plan.  Any and all proceeds generated from the various Liquidating Trust Assets and Claims shall constitute the property of the Liquidating Trust.

The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust (including tax issues related to the Disputed Claims reserve) under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trustee shall be selected by the Committee, in consultation with the Debtors, and subject to Court approval.  The Liquidating Trustee or the Liquidating Trust will also serve as the Disbursing Agent.

The rights and responsibilities of the Liquidating Trustee shall be governed by the Liquidating Trust Agreement.  If any of the provisions herein relating to the rights and

responsibilities of the Liquidating Trustee conflicts with the Liquidating Trust Agreement, the provisions of the Liquidating Trust Agreement govern.

(g) **Investment Powers**. The right and power of the Liquidating Trustee to invest any Cash transferred to the Liquidating Trust (including Cash allocated to the Disputed Claims reserve), the Cash proceeds from the realization or disposition of any of the Liquidating Trust Assets and Claims, and any income earned by the Liquidating Trust, shall be limited to the right and power to invest such Cash in United States Treasury Bills, interest-bearing certificates of deposit, tax exempt securities or investments permitted by section 345 of the Bankruptcy Code or otherwise authorized by the Bankruptcy Court, using prudent efforts to enhance the rates of interest earned on such Cash without inordinate credit risk or interest rate risk; provided, however, that (a) the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust, within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise, and (b) the Liquidating Trustee may expend the Cash of the Liquidating Trust (i) as reasonably necessary to meet contingent liabilities and to maintain the value of the assets of the Liquidating Trust during liquidation, (ii) to pay reasonable administrative expenses (including, but not limited to, any taxes imposed on the Liquidating Trust or fees and expenses in connection with litigation concerning any Claims held by a Liquidating Trust) and (iii) to satisfy other liabilities incurred by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement.

(h) **Trust Implementation**. On the Confirmation Date, the Liquidating Trust will become effective for the benefit of the applicable holders of Allowed Claims and, in respect of any Disputed Claims, the Disputed Claims reserve. The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Liquidating Trust as a grantor trust for federal income tax purposes. All parties (including Debtors, the Liquidating Trustee and holders of Allowed Claims against Debtors) shall execute any documents or other instruments as necessary to cause title to the Liquidating Trust Assets and Claims to be transferred to the Liquidating Trust.

(i) **Termination**. Pursuant to Section 350 of the Bankruptcy Code, when all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed by Final Order, and all of the Liquidating Trust Assets and Claims have been distributed in accordance with the Plan (which distribution shall take place within thirty (30) days of the resolution of the last Chapter 5 cause of action), the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules. The Liquidating Trust will terminate within six months thereafter.

(j) **Books and Records**. Upon the Confirmation Date, Debtors shall transfer and assign to the Liquidating Trust full title to, and the Liquidating Trust shall be authorized to take possession of, all such entities' books and records. The Liquidating Trust shall have the responsibility of storing and maintaining books and records transferred hereunder. Debtors shall

cooperate with the Liquidating Trustee (or Disbursing Agent) to facilitate the delivery and storage of the books and records in accordance herewith. The Liquidating Trustee and Debtors shall be entitled to reasonable access to any books and records transferred to the Liquidating Trust for all necessary corporate purposes, including, without limitation, defending or prosecuting litigation, determining insurance coverage, filing tax returns, and addressing personnel matters. For the purpose of this section, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of Debtors maintained by or in possession of third parties and all of the claims and rights of Debtors in and to their books and records, wherever located.

        (k)     The Debtors shall fully cooperate with the Liquidating Trustee in his discharge of his duties. A former accountant employed by the Debtors has offered his services to the Trustee in exchange for $25.00 per hour. In addition, the President and Chief Executive Officer will continue to cooperate to facilitate the orderly liquidation of the Debtors' assets.

        (l)     The Liquidating Trustee shall be required to be bonded by a fidelity bond payable to the beneficiaries of the Liquidating Trust in the amount of 110% of the amount of assets it is holding on a quarterly basis, which amount shall be reimbursable in immediately available funds. The requirement for a bond shall continue until all assets are distributed.

## ARTICLE 8

## CONDITIONS PRECEDENT

        8.01  **Conditions Precedent to Confirmation Date**. The occurrence of the Confirmation Date of the Plan is subject to satisfaction or waiver of each of the following conditions:

        (a)     the Bankruptcy Court has entered the Confirmation Order in form and substance satisfactory to the Debtors; and

        (b)     the Debtors has received the consent of any third parties or governmental units whose consent is required for confirmation;

        8.02  **Conditions Precedent to Effective Date**. The occurrence of the following shall be a separate conditions to the Effective Date of the Plan:

        (a)     the Confirmation Order has become a Final Order; and

        (b)     all of the Debtors' Assets have been sold and/or abandoned, other than Avoiding Power Causes of Action.

        8.03  **Waiver of Conditions**. The Debtors shall have the right to waive any of the foregoing conditions to Confirmation Date, or to the Effective Date, except for 7.01(a). Without

limiting the foregoing, the Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order or any order related thereto so long as there is no stay in effect. The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation Order without the giving of any notice to any objecting party. In the event of any such appeal, the Debtors may seek the dismissal of such appeal as moot following the Effective Date of the Plan.

## ARTICLE 9

## DISTRIBUTIONS UNDER THE PLAN

9.01 **Powers of the Disbursing Agent**. The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

9.02 **Expenses Incurred After the Effect Date**. Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expense incurred by the Disbursing Agent on or after the Confirmation Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Liquidating Trustee from the Liquidating Trust.

9.03 **Distributions**. All distributions under the Plan shall be made by the Disbursing Agent or the Liquidating Trustee. Distributions to Allowed Claims shall be made as provided above.

9.04 **Method of Payment**. Any Cash payment made by the Disbursing Agent pursuant to the Plan shall be in U.S. dollars, either by check or wire transfer.

9.05 **Timing of Payment**. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be due on the next succeeding Business Day.

9.06 **Setoff**. Nothing contained herein shall be deemed to waive the Debtors' statutory or common law right of setoff.

9.07 ***De Minimis* Distributions**. The Disbursing Agent shall not be required to distribute Cash to any Creditor if the amount of Cash to be distributed to such Creditor is less than $100.00.

9.08 **Unclaimed Distributions to Creditors**.

(a)    **Non-Negotiated Checks**.  If the Holder of an Allowed Claim fails to present for payment a check issued to such Holder pursuant to the Plan within ninety (90) days of the date such check was issued, or if any distributions are returned to the Disbursing Agent due to an incorrect or incomplete address for which the Debtors have not received a correct address, then the amount of Cash attributable to such check or distribution shall be deemed to be Unclaimed Distributions in respect of such Holder's Class of Claims and the payee of such check or distribution shall be deemed to have no further Claim in respect of such check or distribution, and shall not be entitled to participate in any further distributions under the Plan.

(b)    **Revesting of Unclaimed Distributions**.  All Unclaimed Distributions shall revest in the Debtors.

9.09  **Treatment of Disputed Claims**.  Disputed Claims shall be treated as follows under the Plan:

(a)    **Objections to Claims**.  Except as otherwise provided by the Bankruptcy Court or in the Plan, all objections to Claims shall be Filed and served on the Holders of such Claims on or before the later of (i) ninety (90) days after the Confirmation Date, (ii) ninety (90) days after a particular Proof of Claim is Filed, except that such Claim shall not be deemed an Allowed Claim until after the ninety (90) day period lapses, and (iii) such additional date as the Bankruptcy Court may fix upon application of the Debtors; provided, however, that no party in interest shall be required to File an objection to any Claim listed in the Schedules as disputed, contingent, unliquidated or undetermined and for which no Proof of Claim was Filed, which Claim shall be barred and disallowed in its entirety.  Exhibits B, C, D, E and F to the Disclosure Statement include a column indicating if a particular claim is disputed and will be objected to and what amount the Debtors will assert such Claim is worth in their objection.  The Debtors reserve their right to amend, modify, correct or further object to Claims for any reason, including objections arising under Section 502(d) of the Bankruptcy Code.

(b)    **No Distributions Pending Allowance**.  Notwithstanding any other provision of the Plan to the contrary, no distribution shall be made to the Holder of a Disputed Claim or the Holder of a Claim who is the subject of a proceeding against it by the Debtors, unless and until such Disputed Claim becomes an Allowed Claim or such proceeding is resolved.

(c)    **Distributions After Allowance**.  Once a Disputed Claim becomes an Allowed Claim, distribution on account of such Claim shall be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective Claim belongs.

(d)    **Estimation of Disputed, Contingent or Unliquidated Claims**.  Prior to the Effective Date, to effectuate distributions pursuant to the Plan and avoid undue delay in the administration of this Case, on request of the Debtors, the Bankruptcy Court shall estimate the amount of each Disputed Claim or Contingent or Unliquidated Claim for which the Disputed, Contingent and Unliquidated Claims Reserve (as defined below) has been or will be established (the amount so estimated for each Claim being the "Estimated Amount").  The Estimated Amount shall be fixed by Final Order, which shall be deemed the amount of such Claim for all purposes under the Plan.

(e)     **Claims Reserve.**  On or prior to the Effective Date, the Disbursing Agent shall establish the Disputed, Contingent and Unliquidated Claims Reserve in an aggregate amount sufficient to pay each Creditor holding a Disputed Claim or Contingent or Unliquidated Claim as contemplated by the Plan the lesser of (i) the Estimated Amount or (ii) the amount of Cash that such Creditor would have been entitled to receive under the Plan if such claim had been an Allowed Claim on the Effective Date (such account being the "Disputed, Contingent and Unliquidated Claims Reserve" or "Claims Reserve").

# ARTICLE 10

## EXECUTORY CONTRACTS

### 10.01  Assumption or Rejection of Executory Contracts and Unexpired Leases.

(a)     **Executory Contracts**.  All executory contracts that exist between the Debtors and any Entity which have not been assumed or rejected prior to the Effective Date shall be deemed rejected as of the Effective Date.  Nothing contained herein shall constitute a waiver of any claim, right or cause of action that the Debtors may hold against any party to any executory contract with the Debtors, including the insurer under any policy of insurance.

(b)     **Options**.  Any options, warrants or other equity interests representing the right to acquire Common Stock shall be canceled as of the Effective Date.  All Claims arising under such warrants or options shall be classified in Class 3.

(c)     **Unexpired Leases**.  All unexpired leases that exist between the Debtors and any Entity, which have not been assumed or rejected prior to the Effective Date shall be deemed rejected.  Nothing contained herein shall constitute a waiver of any claim, right or cause of action that the Debtors may hold against any lessor.

(d)     **Approval of Assumption, Rejection or Assumption and Assignment of Leases and Contracts**.  Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases to be rejected pursuant to the Plan.  Notice of the hearing on Confirmation of this Plan shall constitute notice to any non-debtor party to an executory contract or unexpired lease, which is to be assumed or rejected under this Plan, of the Debtors' intent to reject such contract or lease.

(e)     **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**.  All Proofs of Claim arising out of the rejection of an executory contract or unexpired lease pursuant to this Article 9 of the Plan must be Filed within thirty (30) days after the Effective Date unless an earlier date has been established by Bankruptcy Court Order.  Any Holder of a Claim arising out of the rejection of an executory contract or unexpired lease who fails to File a Proof of Claim within such time shall be

forever barred, estopped and enjoined from asserting such Claim against the Debtors or the Estate. Unless otherwise ordered by the Bankruptcy Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as General Unsecured Claims in Class 3, 4 or 6, as appropriate, under the Plan. Nothing contained herein shall extend the time for Filing a Proof of Claim for rejection of any contract or lease rejected prior to the Confirmation Date.

## ARTICLE 11

## EFFECTS OF PLAN UPON CONFIRMATION

11.01 **Revesting of Assets**. Except as otherwise set forth herein, subject to the provisions of and for the purposes of distributions in accordance with the Plan, all Assets, including all Causes of Action, shall revest in the Debtors on the Confirmation Date for transfer to the Liquidating Trust. Such revested property shall be free and clear of all liens, claims, encumbrances and interests, except as otherwise provided in the Plan.

11.02 **Injunction**. As of the Effective Date, all Entities that have held, currently hold or may hold a Claim or other debt or liability against the Debtors affected by the Plan are enjoined from taking any action to collect or recover in any manner on account of any such Claims, debts or liabilities from any or all of the Assets, except as otherwise provided in the Plan.

11.03 **Retention of Jurisdiction**. The Bankruptcy Court shall retain and have jurisdiction over the Case until substantial consummation of the Plan for the following purposes:

(a) to adjudicate all controversies concerning the classification or allowance of any Claims or Interests;

(b) to liquidate any Claims which are disputed, contingent or unliquidated;

(c) to determine any and all objections to the allowance of Claims or Interests, or counterclaims to any Claim;

(d) to determine any and all applications for allowance of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(e) to determine any applications pending on the Effective Date for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtors is a party or with respect to which it may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

(f) to adjudicate any actions brought by the Debtors for any Causes of Action or otherwise regarding any property of the Estate at any time prior to expiration of the relevant statute of limitations;

(g)     to determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the last date for objections to Claims;

(h)     to consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Court;

(i)     to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan;

(j)     to consider and act on the compromise and settlement of any Claim or cause of action by or against the Estate;

(k)     to issue orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code; and

(l)     to determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order.

11.04  **Effectuating Documents; Further Transactions; Timing**.  The Debtors are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously.

11.05  **Modification of the Plan**.  The Debtors reserve the right, in accordance with the Bankruptcy Code, to amend or modify the Plan and related documents in any manner prior to the entry of the Confirmation Order.  After entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan and related documents in accordance with, and to the extent permitted by, Section 1127(b) of the Bankruptcy Code, and remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  Every amendment or modification of the Plan shall supersede and render null and void all prior versions of the Plan.

# ARTICLE 12

# CORPORATE EXISTENCE AFTER CONFIRMATION

12.01  **General**.  This Plan shall effect the absolute liquidation of the Debtors. Upon the closing of the Case, the Debtors shall be dissolved.

## ARTICLE 13

## MISCELLANEOUS PROVISIONS

13.01 **Exemption from Transfer Taxes**.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of securities or other property under the Plan; the creation, transfer, filing or recording of any mortgage, deed of trust, financing statement or other security interest; or the making, delivery, filing or recording of any deed or other instrument of transfer under the Plan, shall not be subject to any stamp tax, real estate tax, conveyance, filing or transfer fees, mortgage, recording or other similar tax or other government assessment.  All recording officers and other entities whose duties include recordation of documents lodged for recording shall record, file and accept such documents delivered under the Plan without the imposition of any charge, fee, governmental assessment or tax.

13.02 **Res Judicata**.  Pursuant to Section 1141(d)(3) of the Bankruptcy Code, confirmation will not discharge Claims or Interests against the Debtors; provided, however, that, except as otherwise set forth in the Plan, on and after the Effective Date, all persons and entities that have held, hold or may hold (a) any Claim against or Interest in the Debtors or Debtors in Possession provided for in a Plan confirmed by Final Order of the Bankruptcy Court shall with respect to any such Claim or Interest be permanently enjoined from and against (i) commencing or continuing in any manner any suit, action or other proceeding of any kind against the Debtors, the Debtors in Possession, or Debtors' officers and directors, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Debtors in Possession, or Debtors' officers and directors, (iii) creating, perfecting or enforcing any lien or encumbrance of any kind against the Debtors, the Debtors in Possession, or Debtors' officers and directors, or against any of their properties or interests in property, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or the Debtors in Possession or against any property or interest in property of the Debtors, the Debtors in Possession, or the Estate, as such Plan confirmed by Final Order of the Bankruptcy Court shall be res judicata as to any of the foregoing acts concerning or related to any such Claim or Interest administered by the Plan, and (b) any Claim, right, action, Cause of Action against or Interest against the Debtors, the Debtors in Possession, or Debtors' officers and directors shall be permanently enjoined from and against commencing or continuing any suit, action or proceeding against, asserting or attempting to recover any Claim against or Interest in, or otherwise affecting the Debtors, the Debtors in Possession, or Debtors' officers and directors, with respect to any matter that is the subject of the Plan.  The foregoing enjoinment of the commencement or continuation of any suit, action or proceeding against, asserting or attempting to recover any Claim against or Interest in, or otherwise against the Debtors, the Debtors in Possession, or Debtors' officers and directors in no way forecloses the commencement or continuation of  valid Chapter 5 claims under the Bankruptcy Code against the Debtors, the Debtors in Possession, or Debtors' officers and directors.

13.03 **Revocation or Withdrawal of the Plan**.  The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date.  If the Debtors revoke or withdraw the Plan, then the Plan shall be deemed null and void.

13.04 **Binding Effect**.  The Plan shall be binding upon, and shall inure to the benefit of, the Debtors, the Holders of all Claims and Interests, and their respective successors and assigns.  Confirmation of the Plan binds each of the Holders of Claims and Interests to the terms and conditions of the Plan, whether or not such Creditor or Interest Holder has accepted the Plan.

13.05 **Construction**.  The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to construction of the Plan.

13.06 **Time**.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006 shall apply.

13.07 **Headings**.  The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor are intended in any manner to affect any interpretation of the provisions of the Plan.

13.08 **Governing Law**.  Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations of any Entity arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without regard to New York choice of law provisions.

13.09 **Benefit Programs**.  As of the Confirmation Date, all scheduled programs or plans maintained by the Debtors for the benefit of present or former employees and dated on or before the Petition Date which have not been previously terminated shall be deemed to be terminated. Any Entity with a Claim arising from such termination shall be treated as a Holder of a General Unsecured Claim.

13.10 **Reserve**.  No later than the Effective Date, the Debtors shall have paid all fees due to the United States Trustee through the Effective Date, and establish a reserve of $10,000 for unpaid fees.

13.11 **Cramdown**.  At the Confirmation Hearing, the Debtors may seek Confirmation of this Plan notwithstanding the rejection of the Plan by any impaired Class of Creditors or Interest Holders.

13.12 **Execution of Plan Documents**.  Upon application by the Debtors, the Court may issue an order directing any necessary party to execute, deliver, or to join in the execution or delivery of an instrument or document, and to perform any act necessary for the consummation of this Plan.

13.13 **Closing of Case**.  Unless otherwise ordered by the Bankruptcy Court, the Case shall be deemed closed six months after the Effective Date.  Closing of the Case shall not affect the pendency of any adversary proceeding or contested matter filed before the Case is closed.

13.14  **Exculpation**.  The Debtors, the Committee, the Disbursing Agent, and their respective members, officers, directors, employees and agents (including any attorneys, financial advisors, investment bankers and other Professionals retained by any such persons) shall have no liability to any holder of any Claim or Interest or any other person for any act or omission in connection with, or arising out of, this Case, including, without limitation, with respect to the Disclosure Statement, the Plan, the solicitation of votes for and the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, objections to Claims, the pursuit of Avoiding Power Causes of Action, acts of the Liquidating Trustee, choice of the Liquidating Trustee, or the property to be distributed under the Plan, except for any act or omission constituting bad faith, self dealing, breach of fiduciary duty, reckless or willful misconduct, or gross negligence (including malpractice constituting gross negligence) as determined by a final court order and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan, the Bankruptcy Code, and applicable law.

13.15  **Post-Confirmation Date Fees and Expenses**.

(a)  **Fees and Expenses of Professionals**.  After the Confirmation Date, the Liquidating Trustee shall, out of the assets in the Liquidating Trust, pay the reasonable fees and expenses of the professional persons employed by the Debtors and/or the Liquidating Trustee in connection with the implementation and consummation of the Plan, the claims reconciliation process and any other matters as to which such professionals may be engaged and, after the Effective Date, may enter into reasonable contingency fee arrangements with respect to affirmative claims brought or maintained by the Liquidating Trustee against third parties.  The fees and expenses of such professionals shall be subject to the approval of the Bankruptcy Court.

(b)  **Fees and Expenses of Liquidating Trustee and Disbursing Agent**.  The fees and expenses of the Liquidating Trustee and any amounts paid by the Liquidating Trustee to professionals shall be subject to the approval of the Bankruptcy Court.

(c)  **Fee Claims**.  Professionals or other entities asserting Claims shall file and serve on the Debtors and such other entities that are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, applications for final allowance of such Claims no later than 60 days after the Effective Date.

**Remainder of this page intentionally left blank**

Dated:  May 4, 2009

LINCOLN LOGS LTD.


By:     /s/ John D. Shepherd
Name:   John D. Shepherd
Title:   Chief Executive Officer

SNAKE RIVER LOG HOMES, LLC


By:     /s/ John D. Shepherd
Name:   John D. Shepherd
Title:




PHILLIPS LYTLE LLP

By:    /s/ Angela Z. Miller
      Angela Z. Miller
      William J. Brown
      Todd A. Ritschdorff
Suite 3400
One HSBC Center
Buffalo, New York  14203-2887
Telephone No. (716) 847-8400


      and

Omni Plaza
30 South Pearl Street
Albany, New York 12207
Telephone No. (518) 472-1224
Counsel for the Debtors and Debtors in Possession

Doc # 01-2276728.8